# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL |
| | : | NO.  3:06cr100 (MRK) |
| v. | : | |
| | : | |
| TRANEL MCCOY | : | |

## RULING AND ORDER

After a four-day trial in August 2006, a jury convicted Mr. McCoy on all four counts in these two cases, which were joined for trial.  Mr. McCoy now seeks a judgment of acquittal on Count One in case number 04cr336, which charged him with conspiracy to possess with intent to distribute five grams or more of cocaine base, and on Count Three in case number 06cr100, which charged him with possession of a firearm in furtherance of a drug trafficking crime.  *See* Rule 29 Motion for Judgment of Acquittal [doc. # 43].

The standards for granting a judgment of acquittal under Rule 29 of the *Federal Rules of Criminal Procedure* are well known and not disputed in this case.  In sum, the Court must consider the evidence in the light most favorable to the Government, crediting every inference that the jury might have drawn from the evidence in favor of the Government.  *United States v. James*, 239 F.3d 120, 123-24 (2d Cir. 2000).   Furthermore, it is the exclusive province of the jury to make all credibility determinations and to choose among competing inferences.  Therefore, this Court cannot grant a motion for judgment of acquittal unless it is convinced that "no rational trier of fact could have found each essential element of the crime beyond a reasonable doubt." *United States v. Walsh*,

194 F.3d 37, 51 (2d Cir. 1999).   The Court will consider Mr. McCoy's arguments as they relate to each count.

**Count One, 04cr336.**        Mr. McCoy argues that there was insufficient evidence to support the jury's verdict that he was guilty of conspiracy to distribute 5 grams or more of cocaine base.  Specifically, he argues that because no drugs were ever seized from Mr. McCoy during the conspiracy, there is no evidence that Mr. McCoy was a participant in a conspiracy whose object was to distribute cocaine base.   The Court disagrees.

There was ample evidence from which a rational juror could have found that Mr. McCoy participated in a conspiracy involving the distribution of cocaine base.  For example, among other evidence, at the time of his arrest, Mr. McCoy admitted that he knew Clayton Robinson and Daren Willis, that he had purchased crack cocaine from them in the past and had done so on behalf of several of his friends.  Surveillance and telephone wiretaps confirmed Mr. McCoy's close association with Mr. Robinson and Mr. Willis.  Also, intercepted telephone communications involving Mr. McCoy showed that he regularly purchased "Q"s from Mr. Robinson, which FBI Agent Borenstein testified is a common term for a quarter ounce of cocaine base.   Also, David Francis was arrested on September 13, 2004 with 67.4 grams of cocaine base after meeting with a number of customers, including Mr. McCoy.   On the basis of this evidence, the Court cannot say that no rational juror could conclude beyond a reasonable doubt that Mr. McCoy was involved in a conspiracy to distribute cocaine base.

**Count Three, 06cr100.**        Mr. McCoy also argues that there is insufficient evidence to support his conviction for possession of a firearm in furtherance of a drug trafficking crime.  Here,

Mr. McCoy contends that there was no evidence that he knowingly possessed the firearm at issue and that it was used in furtherance of a drug trafficking crime.   Once again, the Court disagrees.

A person may be convicted under § 924(c)(1)(A) for "mere possession of a firearm" so long as "that possession is 'in furtherance' of a drug trafficking crime." *United States v. Lewter*, 402 F.3d 319, 321 (2d Cir.2005).   That said, "the mere presence of a weapon at the scene of a drug crime, without more, is insufficient to prove that the gun was possessed 'in furtherance of' the drug crime." *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006).   Accordingly, as the Second Circuit noted recently in *Snow*, the "Government cannot convict under § 924(c)(1)(A) by relying on the generalization that any time a drug dealer possesses a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs." *Id.* (internal quotations marks omitted).   Instead, the Government must establish the existence of a specific "nexus" between the charged firearm and the charged drug selling operation.   "Courts look at a number of factors to determine whether such a nexus exists but the ultimate question is whether the firearm 'afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking.'" *Id.* (quoting *Lewter*, 402 F.3d at 322).   "In answering this question, courts distinguish between a gun on the premises which has no reasonable relationship to the drug possession and future distribution and a weapon that is present to further that possession." *Snow*, 462 F.3d at 62.

As recited in detail in the Government's brief, police found a mini-drug trafficking factory in Mr. McCoy's bedroom when he was arrested on December 20, 2005, while he was out on release pending trial on the charge in the first indictment.   In or about the entertainment cabinet in Mr. McCoy's bedroom, police found eleven grams of crack cocaine, drug packaging material, numerous small bags of marijuana in a larger bag, and a digital scale.   They also found a large amount of cash

underneath Mr. McCoy's bed and found in the entertainment center a semi-automatic handgun that was fully loaded with hollow point ammunition. FBI Agent Borenstein testified as an expert witness that firearms are regularly used in the drug trade and that hollow point ammunition is particularly useful to drug dealers to protect them, their drugs, or their drug proceeds. Finally, and importantly, when police found the drugs in the entertainment center, Mr. McCoy was overheard saying to his distraught wife that she should not worry because the police knew the drugs belonged to him. Police also seized a vial from Mr. McCoy's person that contained over four grams of crack cocaine.

From this evidence, the Court believes the jury was more than justified in concluding that McCoy possessed the firearm in question in furtherance of a drug trafficking offense. In this regard, the Court notes that the facts of this case are very similar to those in *Snow*. There, as the Government points out, the Second Circuit made the following observations that aptly apply to this case as well:

> Viewing this evidence in the light most favorable to the verdict, a reasonable juror could conclude that Snow's possession of the handguns facilitated or advanced the instant drug trafficking offense by "protecting himself, his drugs, and his business." Here, loaded handguns, illegally possessed, were found in the bedroom of an apartment where drugs were packaged and stored for sale. The guns were in close physical proximity to the paraphernalia used in the packaging and sale of crack cocaine and the trace amounts of illegal narcotics found in the kitchen. Moreover, the guns were found in the same dresser as $6,000 in cash, which a reasonable juror could conclude were drug proceeds. From the proximity between the handguns, proceeds, trace amounts of drugs, and drug paraphernalia, a reasonable juror could conclude that the "person to be protected was a drug dealer" and "drug packaging paraphernalia, and the proceeds of drug trafficking" were "among the things being protected." Applying the deferential standard we must when reviewing the legal sufficiency of a jury's guilty verdict, we hold that this was sufficient evidence to support Snow's conviction under § 924(c)(1)(A).

*Snow*, 462 F.3d at 62.

Mr. McCoy points out that others were in the house when police seized the firearm and drugs. But Mr. McCoy admitted at the time that the drugs in the bedroom were his and he had a vial of crack cocaine on his person at the time of his arrest. The firearm was found in Mr. McCoy's bedroom in the same entertainment center where the drugs were located; police also discovered drug trafficking paraphernalia and a large amount of cash in Mr. McCoy's bedroom. There is no indication that Mr. McCoy's wife was involved in the drug trade. Therefore, the jury was justified in concluding that the firearm found in Mr. McCoy's bedroom and along with the drugs and the drug paraphernalia all belonged to Mr. McCoy and that he used the fully loaded firearm, which was found in close proximity to the drugs and the cash, to protect himself, his drugs, and his drug proceeds. *See, e.g.*, *id.* at 62-63 ("[A] drug dealer may be punished under § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself.").

It is true that Mr. McCoy presented evidence from two of his minor stepchildren (ages ten and thirteen) that John Ball put the firearm in Mr. McCoy's bedroom once Mr. Ball discovered that police were about to raid the home. But the jury was not required to believe the testimony of Mr. McCoy's stepchildren. In that regard, the Court notes that the testimony of the stepchildren was not entirely consistent (for example, one said the door to the bedroom was wide open and the other said it was closed except for a narrow crack), it was contradicted by evidence found by the police (for example, both children said that Mr. Ball put the firearm in their mother's nightstand, while police found it in the entertainment center on Mr. McCoy's side of the bed), it was improbable (the children said that when Mr. Ball saw police coming he placed a large bag of marijuana in the top of the entertainment center without ever explaining what Mr. Ball had been doing with this large bag before

5

doing so), and it was rebutted by John Ball's testimony (Mr. Ball denied that the gun was his and denied ever being in the bedroom that evening).

As the Second Circuit has held, "[t]he availability of a gun to facilitate a narcotics offense poses a fact question for the jury [and] [f]acilitation may be found based on reasonable inferences derived from circumstantial evidence." *United States v. Melendez*, 60 F.3d 41, 46 (2d Cir. 1995); *see, e.g.*, *United States v. Finley*, 245 F.3d 199, 203 (2d Cir.2001); *United States v. Taylor*, 18 F.3d 55, 58 (2d Cir. 1994). Here, the Court cannot say that no rational juror could conclude beyond a reasonable doubt that Mr. McCoy possessed a firearm in furtherance of a drug trafficking offense.

Accordingly, the Court DENIES Mr. McCoy's Motion for Judgment of Acquittal [doc. # 43] in this cases.

IT IS SO ORDERED,

/s/ _____Mark R. Kravitz_____
United States District Judge

Dated at New Haven, Connecticut: **December 21,  2006**